

## WEST WEBB ALLBRITTON & GENTRY

ACCEPTED
15-24-00071-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
Gaines West 5/23/2025 3:18 PM
Partner
gaines.west@westwebb.law CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS

5/23/2025 3:18:52 PM

CHRISTOPHER A. PRINE
Clerk

May 23, 2025

The Honorable Fifteenth Court of Appeals
300 W 15th Street, Suite 607
Austin, Texas 78701

Re:  *Texas A&M University v. Snider*, Cause No. 15-24-0071-CV

To the Honorable Fifteenth Court of Appeals:

The Court held oral argument on Tuesday, May 20, 2025, in the above-styled cause between Appellee Dr. Erin Snider ("Dr. Snider") and Appellant Texas A&M University (the "University"). Dr. Snider respectfully submits this correspondence to provide the Court with citations to the record in this case responsive to the Court's colloquies during oral argument.

***Abrogation of Sovereign Immunity***. Dr. Snider and the University agree, both in their respective briefs and during oral argument, that the U.S. Supreme Court's *Hibbs* opinion makes clear that Congress abrogated sovereign immunity for FMLA family-care claims, not self-care claims.[1]

***Notice to the University***. Dr. Snider does not dispute that the FMLA imposes a notice requirement. However, Dr. Snider respectfully reminds the Court that this requirement is "very easy"[2] to satisfy, is "not onerous,"[3] and does not require Dr. Snider to even reference the FMLA.[4] Rather, Dr. Snider need only provide notice "sufficient to reasonably apprise [the University] that her request to take time off could fall under the FMLA."[5] The record shows that: (1) Dr. Snider disclosed to the University on multiple occasions the serious health conditions of herself and her children in utero and requested leave "*for a medical condition that has inhibited [her] ability to work*;"[6] (2) her supervisor repeatedly acknowledged her leave was for "medical reasons;"[7] (3) the University signed off on Dr. Snider's leave requests—*twice*;[8] and (4) the University expressly referenced the FMLA and even *filled out the FMLA forms on behalf of Dr. Snider*.[9] Even though Dr. Snider was not required to use "magic words," the record shows that Dr. Snider went above and beyond what the FMLA requires, and the University has no factual or legal basis to contend otherwise.

---

[1] *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721 (2003).
[2] *Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466 (8th Cir.).
[3] *Burnett v. LFW, Inc.*, 472 F.3d 471 (7th Cir. 2006).
[4] 29 C.F.R. § 825.303(b).
[5] *Lanier v. University of Tex. Sw. Med. Ctr.*, 527 Fed. Appx. 312 (5th Cir. 2013).
[6] Clerk's R. 181–83, 396 (2017); Clerk's R. 562–65 (2018).
[7] Clerk's R. 179, 393, 576 (2017); Clerk's R. 185, 399 (2018).
[8] Clerk's R. 180, 572 (2017); Clerk's R. 186, 578 (2018).
[9] Clerk's R. 567–70 (2018).

*__Medical Documentation__*. During oral argument, the University claimed that the FMLA required Dr. Snider to provide her medical records. This is false. Although the FMLA requires the leave be for a "serious health condition," the FMLA places the burden on the employer to "obtain any additional required information through informal means."[10] The FMLA relieves the employer's burden *only* if the employer requested supporting documentation and the employee "fail[ed] to respond."[11] The University did not—because it cannot—identify in the record where the University made such a request that Dr. Snider ignored. In fact, the record shows that Dr. Snider volunteered to provide supporting documentation from her treating physician,[12] but the University never requested anything from Dr. Snider before granting her leave.

*__Care for the Child__*. Respectfully, neither the Court nor the parties are medical professionals qualified to determine whether pregnancy-related conditions affect the mother, the child in utero, or both. Relevant here, chromosomal abnormalities affect the child in utero—*not the mother*. Moreover, even if the University asked Dr. Snider to provide documentation of the child's medical condition, the FMLA does not require Dr. Snider to do so. Rather, the FMLA allows an employer concerned about the authenticity of a serious health condition to request a physician's note; but the FMLA does not require the production of medical records or disclosure of sensitive personal health information. The Americans with Disabilities Act and the Pregnancy Discrimination Act provide similar protections to Dr. Snider. Though not required under the FMLA, Dr. Snider voluntarily disclosed to the University her miscarriages, IVF struggles, and the serious health conditions of her children in utero.[13] Because neither the Court nor the parties are qualified to make medical determinations, and because federal privacy and anti-discrimination law prohibits the compelled disclosure of sensitive health information and medical records, the Court should abstain from such an analysis.

*__Evidence of Leave__*. The only evidence supporting the University's claim that Dr. Snider never took leave is its personnel records.[14] However, Dr. Snider had no control over such records— only the University did. The University even conceded during oral argument that Dr. Snider took advantage of the reduced teaching workload the University granted her as medical leave. It would lack reason to bar an FMLA claim simply because an employer's own records indicate no leave was taken. Such burden-shifting would incentivize employers to keep inaccurate records.

*__Adequate Relief__*. Even if the Court concludes that a child in utero is not a "son or daughter" and that Dr. Snider's FMLA claims are only self-care, the University is not entitled to sovereign immunity in this case. During oral argument, the University claimed that Dr. Snider seeks retrospective relief barred by sovereign immunity. The record shows to the contrary; Dr. Snider requests *prospective* injunctive relief from the University, specifically reinstatement to the position

---

[10] 29 C.F.R. § 825.303(b).
[11] 29 C.F.R. § 825.303(b).
[12] Clerk's R. 181–83, 395–97.
[13] Clerk's R. 181–83, 396, 562–70.
[14] Clerk's R. 508–09.

of Associate Professor with tenure.[15] Reinstatement is a well-settled exception to principles of sovereign immunity.[16]

***Official Capacity Defendants***. The Court questioned what effect allowing Dr. Snider to add official capacity defendants would have on this case. Without adding University officials in their official capacity, Dr. Snider cannot seek prospective relief under the *Ex Parte Young* exception[17] and, furthermore, will be precluded from bringing claims against these individuals due to the statute of limitations. Prior to the hearing on the University's Second Amended Partial Plea to the Jurisdiction, Dr. Snider filed a Motion for Leave to Amend to add official capacity defendants.[18] Despite filing a response to Dr. Snider's motion and setting request,[19] the University filed its notice of appeal before the trial court could rule on or otherwise consider Dr. Snider's motion.[20] Perhaps most importantly, the University refused to provide documentation requested by Dr. Snider in her Second Request for Production, which, if provided, would further support her claims. Because Dr. Snider can cure the jurisdictional defect, if any, by repleading, the Court should allow Dr. Snider an opportunity to do so.[21]

Dr. Snider recognizes and appreciates the Court's hesitance to issue an opinion with sweeping effects or to take a novel stance. Fortunately, the Court need not do so here. Dr. Snider requests the Court to review the record in this case and affirm the State's longstanding and deeply held belief that children in utero are lives worth protecting.

Sincerely,

Gaines West

GW/cf

---

[15] Clerk's R. 14, 228, 456; *see State Employees Bargaining Agent Coalition v. Rowland*, (494 F.3d 71 (2nd Cir. 2007) (concluding that harm caused by elimination of position was "ongoing" and, therefore, prospective for purposes of *Ex Parte Young*); *see also Carten v. Kent State Univ.*, 282 F.3d 391 (6th Cir. 2002) (holding that reinstatement was prospective relief designed to end a continuing violation of federal law).

[16] *Ex Parte Young*, 209 U.S. 123 (5th Cir. 1908); *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318 (5th Cir. 2008).

[17] *Williams on behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020).

[18] 2d Supp. Clerk's R. 22–43.

[19] 2d Supp. Clerk's R. 49–52.

[20] Clerk's R. 582–85.

[21] *See Texas A&M Univ. Dep't of Transp., Parking Servs. Dep't v. Reeves*, 708 S.W.3d 312 (15th Cir. 2025, no pet.) (remanding to allow the appellee an opportunity to replead to cure jurisdictional defects) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004)).

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Billy Hart on behalf of Gaines West
Bar No. 21197500
billy.hart@westwebblaw.com
Envelope ID: 101224791
Filing Code Description: Letter
Filing Description: Letter to 15th Court of Appeals
Status as of 5/23/2025 3:33 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Billy SHart | | billy.hart@westwebblaw.com | 5/23/2025 3:18:52 PM | SENT |
| Jay Rudinger | | jay.rudinger@westwebblaw.com | 5/23/2025 3:18:52 PM | SENT |
| Wolfgang PHirczy de Mino | | wphdmphd@gmail.com | 5/23/2025 3:18:52 PM | SENT |
| karel macias | | karel.macias@oag.texas.gov | 5/23/2025 3:18:52 PM | SENT |
| Brianna Krominga | | brianna.krominga@oag.texas.gov | 5/23/2025 3:18:52 PM | SENT |
| Melissa Koelsch | | melissa.koelsch@westwebb.law | 5/23/2025 3:18:52 PM | SENT |
| William Geist | | cole.geist@westwebblaw.com | 5/23/2025 3:18:52 PM | SENT |
| Gaines West | | gaines.west@westwebb.law | 5/23/2025 3:18:52 PM | SENT |